UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WALTER L. GOODMAN,           )<br>                              )<br>      *Plaintiff*          )<br>                              )    Cause No. 3:20-cv-165 RLM<br>      v.                      )<br>                              )<br>ANDREW SAUL, Commissioner of  )<br>Social Security,              )<br>                              )<br>      *Defendant*         )| |

## ORDER AND OPINION

Walter Goodman seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income under the Social Security Act, 42 U.S.C. § 1381 et seq. The court has jurisdiction over this action pursuant to 42 U.S.C. § 1383(c)(3). The court took the appeal under advisement after oral argument on January 25, 2021, and for the following reasons AFFIRMS the Commissioner's decision.

Mr. Goodman initially filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income on November 7, 2017. At a February 19, 2019, hearing at which he was represented by counsel, Mr. Goodman amended his alleged onset date to November 7, 2017, and withdrew his request for hearing as it pertained to his Title II application for disability benefits. Based on the medical evidence and testimony from Mr. Goodman and vocational expert Kathleen Doehla, the administrative law judge found that:

- Mr. Goodman has severe impairments: disorder of the left ankle/foot.
- Mr. Goodman's impairments aren't severe enough, either singularly or in combination, to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.
- Mr. Goodman has the residual functional capacity to perform medium work except that Mr. Goodman can only occasionally climb ladders, ropes or scaffolds, and can only occasionally crouch.
- Mr. Goodman can't perform any past relevant work.
- Considering Mr. Goodman's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Mr. Goodman can perform. The ALJ indicated that he considered the vocational expert's testimony that Mr. Goodman could perform the requirements of occupations such as: industrial cleaner (300,000 positions nationally), laundry worker (64,000 positions nationally), and transportation cleaner (49,000 positions nationally).

The ALJ concluded that Mr. Goodman wasn't disabled within the meaning of the Social Security Act and denied his application for benefits. When the Appeals Council denied his request for review, the ALJ's decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000); Jones v. Astrue, 623 F. 3d 1155, 1160 (7th Cir. 2010). This appeal followed.

The administrative record contains in relevant part four state agency opinions, two consultative examination reports, and medical opinions from two

2

of Mr. Goodman's treating providers: Dr. Ted Achufusi and Karla Schoof, MSW/LSW. Mr. Goodman argues that the ALJ didn't engage in a legally sufficient analysis or offer legally or logically sufficient reasons for the weight she assigned to the opinion evidence from these sources when she determined that Mr. Goodman didn't have the medically determinable impairments he alleged. Mr. Goodman maintains that this was legal error and is harmful because omission of medically determinable impairments at step two of the ALJ's analysis necessarily results in omission of limitations in Mr. Goodman's vocational findings.

First, Mr. Goodman argues that the ALJ didn't specify the weight she gave to the state agency opinions or the consultative examination reports as the Social Security Regulations require. Mr. Goodman contends that the ALJ incorrectly said that the state agency opinions found insufficient evidence to determine whether Mr. Goodman had the alleged medically determinable impairments of left shoulder pain, lower lumbar spinal pain, arthritis in joint, Asperger's syndrome, and ADHD. The ALJ ultimately decided that none of these conditions were medically determinable impairments. Mr. Goodman contends that this was error because the ALJ wasn't free to make incorrect findings about the state agency opinions and use those findings as support for questioning the existence of medical conditions identified in the treatment record.

The Social Security Regulations require ALJs to "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions

3

and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c. The ALJ didn't articulate how persuasive she found the state agency opinions or the consultative examination reports. Mr. Goodman is also correct that the ALJ was wrong in saying that the state agency consultants found too little evidence to determine whether Mr. Goodman had the alleged medically determinable impairments, citing exhibits 1A, 2A, 5A, and 6A. Those exhibits actually say that there was insufficient evidence to determine whether Mr. Goodman had the alleged impairments during the period before Mr. Goodman was last insured (December 31, 2012), but they conclude that Mr. Goodman had non-severe medically determinable impairments of osteoarthrosis and allied disorders, spine disorders, and ADHD during the period relevant to Mr. Goodman's Title XVI claim. This was error.

"But administrative error may be harmless: [a court] will not remand a case to the ALJ for further specification where [the court is] convinced that the ALJ will reach the same result. That would be a waste of time and resources for both the Commissioner and the claimant. Thus, [a court] look[s] at the evidence in the record to see if [it] can predict with great confidence what the result on remand will be." McKinzey v. Astrue, 641 F.3d 884, 892 (7th Cir. 2011). The ALJ cited exhibits 6F and 8F (both reports from Mr. Goodman's treating physician) in determining that Mr. Goodman's left shoulder pain was nonmedically determinable, saying that Dr. Achufusi didn't provide Mr. Goodman with any diagnosis after he went to Dr. Achufusi in April 2018 complaining of left shoulder pain. The ALJ also noted that Dr. Achufusi found that Mr. Goodman could lift

4

21-50 pounds and occasionally reach above the shoulders and handle with the left upper extremity. The ALJ cited the consultative psychological examiner's report and noted that it didn't diagnose Mr. Goodman with ADHD.

A court reviewing an ALJ's decision conducts "a critical review of the evidence," Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005), and determines whether the ALJ provided a logical bridge between the evidence and her conclusions, Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). The court can't reweigh the evidence, make independent findings of fact, or substitute its own judgment for that of the Commissioner. Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009). Mr. Goodman cites no evidence other than the state agency opinions to show that the ALJ's conclusions are erroneous. Although the ALJ committed error, the error was harmless. The ALJ cited evidence from Mr. Goodman's own treating provider in determining whether Mr. Goodman had the alleged medically determinable impairments. Remanding the case for reconsideration in light of the state agency opinions, or to require the ALJ to articulate how persuasive she found the state agency opinions and consultative examiner's reports, is unlikely to yield a different result.

Second, the record contains opinions from two of Mr. Goodman's treating providers—Dr. Achufusi and Ms. Schoof, MSW—whose evaluations of Mr. Goodman support his alleged medically determinable impairments. *See* exhibits 6F, 8F, and 10F. The ALJ found these opinions unpersuasive because they were "not supported by or consistent with the objective evidence." [Rec. at 17, 20]. Mr.

5

Goodman argues that the ALJ offered little rationale for discrediting their opinions and didn't confront the evidence in their opinions that didn't support her conclusion. Therefore, Mr. Goodman says, the ALJ's analysis of the opinions isn't legally sufficient.

An ALJ must evaluate the persuasiveness of a medical opinion according to a list of factors provided in 20 C.F.R. § 404.1427(c). Those factors include: (1) the examining relationship; (2) the treatment relationship (including the length of treatment and frequency of examination and the nature and extent of the treatment relationship), (3) the supportability of the opinion from relevant evidence; (4) the consistency of the opinion with the record as a whole; (5) the treating physician's specialization; and (6) other factors which either support or contradict the medical opinion. Id. "[A]lthough an ALJ doesn't need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it. The ALJ must confront the evidence that doesn't support her conclusion and explain why that evidence was rejected." Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014). Ultimately, the ALJ "must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d at 1160.

The ALJ spent a good portion of her decision discussing and analyzing Dr. Achufusi's opinions in determining their persuasiveness. For example, the ALJ

6

acknowledged that Dr. Achufusi opined in 2018 that Mr. Goodman "could stand for 5 hours and sit for 6-8 hours but that he could not stand for 6-8 hours." [Rec. at 20]. The ALJ found that opinion unpersuasive, noting "that there is nothing to support that the claimant could not stand for 6-8 hours, as he had a normal left ankle x-ray and a steady gait." [Rec. at 20]. But Mr. Goodman argues that the ALJ ignored evidence because she didn't "explain why x-ray imaging of Mr. Goodman's left ankle showing ossification consistent with a prior injury coupled with Dr. Achufusi's clinical observations of a prominent left foot calcaneus bone, poor eversion of the left ankle, [and] left foot drop were insufficient" to support Dr. Achufusi's opinion that Mr. Goodman couldn't stand for longer than 5 hours.

Mr. Goodman also argues that Dr. Achufusi opined that Mr. Goodman had permanent limitations leaving him completely unable to work, including limitations in sitting, standing, walking, lifting, pushing, and pulling, primarily due to a history due to a broken left ankle, and the ALJ didn't analyze this opinion. That opinion wasn't included in the decision per se, but the ALJ did analyze Mr. Goodman's visit to Dr. Achufusi in 2017 when Mr. Goodman complained of left ankle pain but admitted it was tolerable. [Rec. at 19]. Dr. Achufusi made no specific recommendations for care of the ankle during that visit. Id. The ALJ also explained that Dr. Ralph Inabnit found that Mr. Goodman had intact strength and sensation with no significant weakness with direct strength testing and had no issues walking heel-to-toe. Id. The ALJ also noted that Mr. Goodman returned to Dr. Achufusi in April 2018 for left ankle pain and

7

that, while Mr. Goodman said he only took ibuprofen 1-2 times a week and exercised daily, he had a prominent left foot calcaneus bone with poor eversion and mild left foot drop. Id. Dr. Achufusi prescribed Mobic to treat the ankle. Id.

Mr. Goodman also points out that Dr. Achufusi opined that Mr. Goodman was limited to occasional reaching above the shoulder with his left upper extremity, and reported that Mr. Goodman had chronic pain in his left shoulder. Mr. Goodman argues that the ALJ should have analyzed this opinion, but didn't. But the ALJ reviewed Mr. Goodman's April 2018 visit, when Dr. Achufusi found that Mr. Goodman could lift 21-50 pounds and occasionally reach above the shoulders and handle items with the left upper extremity. [Rec. at 20].

The ALJ's analyzed Dr. Achufusi's opinions several times and explained why she found them inconsistent with the objective medical evidence. This court can't reweigh the evidence or substitute its own judgment for that of the Commissioner's on review. Simila v. Astrue, 573 F.3d at 513. So, while the ALJ didn't address every single piece of evidence in the record, the ALJ's analysis of Dr. Achufusi's opinion was sufficient to build the requisite logical bridge between the evidence and her conclusion to allow for meaningful judicial review. Likewise, the ALJ's analysis of Ms. Schoof's opinions was legally sufficient to support her conclusion that the opinions weren't persuasive. The ALJ noted that Ms. Schoof's opinions weren't consistent with the opinions of the doctors at the Swanson Center in October 2018, Dr. Heroldt in January 2018, or Dr. Dhatreecharan in January 2019. Exhibits 1F and 11F; *see* 20 C.F.R. § 404.1427(c)(4).

The court doesn't address Mr. Goodman's argument that his vocational findings are erroneous because that argument fundamentally relies on his first argument that the ALJ erred in evaluating the medical opinion evidence. Accordingly, the court AFFIRMS the Commissioner's decision.

SO ORDERED.

ENTERED:  March 2, 2021

/s/ Robert L. Miller, Jr.<br>Judge, United States District Court